

ENTERED
02/13/2014

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § § | |
| Charles J. Ruth, III | § | Case No. 09-30563-H4-13 |
| Jennifer L. Ruth | § | |
| Debtors. | § § § | Chapter 13 |

**MEMORANDUM OPINION REGARDING CERTIFICATION FOR DIRECT APPEAL TO THE FIFTH CIRCUIT COURT OF APPEALS OF THAT ONE CERTAIN APPEAL FILED BY DAVID G. PEAKE, THE CHAPTER 13 TRUSTEE, APPEALING THIS COURT'S ORDER DENYING TRUSTEE'S MOTION TO MODIFY CONFIRMED CHAPTER 13 PLAN (DOC. NO. 204)**
[Doc. No. 231]

I. INTRODUCTION

The dispute in this Chapter 13 case involves an important issue over which there is no controlling decision of the Fifth Circuit, or of the Supreme Court of the United States. Specifically, should above-median income debtors who are not paying their unsecured creditors a 100% dividend be allowed to receive a discharge prior to making all of their scheduled 60 monthly plan payments when, during the course of their case, they make a lump sum payment which, when added to the plan payments already made, exceeds the plan base?[1] In the case at bar, the debtors have made approximately 56.5 of their 60 plan payments[2], and they also paid $10,000.00 from a settlement, all of which the Chapter 13 trustee has distributed to creditors. The sum of the 56.5 payments plus the $10,000.00 exceeds the plan base of $93,196.74, and

---

[1] The "plan base" is the aggregate dollar amount which a debtor pays to the Chapter 13 trustee during the pendency of the Chapter 13 case. For example, if a confirmed Chapter 13 plan requires the debtor to pay $1,000.00 per month to the trustee for 60 months, then the plan base is $60,000.00 (i.e., $1,000.00 x 60 = $60,000.00).

[2] In this case, a wage order has been in effect. The employer makes payments directly to the trustee twice each month. That is the reason why the debtors in this case have made 56.5 payments of their scheduled 60 monthly plan payments. In this Court's oral ruling from the bench on the Trustee's Motion to Modify Confirmed Chapter 13 Plan [Doc. No. 204], the undersigned judge made references to payments to be made in months 57, 58, 59, and 60. [November 5, 2013 Tr. 4:10–4:17]. However, the reference to month 57 should not be construed to mean that debtors owe the entire amount due for month 57.

therefore the debtors contend that they are relieved of making their final 3.5 plan payments and are immediately entitled to a discharge. The Chapter 13 trustee strongly disagrees. He contends that the debtors are still required to make these final 3.5 plan payments because unsecured creditors are not receiving a 100% payout and these debtors, as above-median income debtors, are required to make all 60 payments.[3]

The undersigned bankruptcy judge has ruled in favor of the debtors, in part, due to an unpublished per curiam Fifth Circuit opinion issued pre-BAPCPA by the Honorable Edith H. Jones, the Honorable Carolyn Dineen King, and the Honorable Thomas M. Reavley. *Bayshore Nat'l Bank of La Porte v. Smith (In re Smith)*, 252 F.3d 1357, at *1 (5th Cir. 2001) (per curiam). In making its ruling, this Court also relied upon the decision of Bankruptcy Judge Marvin Isgur in *In re Ezzell*, 438 B.R. 108 (Bankr. S.D. Tex. 2010), in which he cited certain *dicta* in the Fifth Circuit's opinion of *Meza v. Truman (In re Meza)*, 467 F.3d 874 (5th Cir. 2006). But, when so ruling, the undersigned bankruptcy judge noted that post-BAPCPA opinions from other Circuits cited by the trustee lend some credence to the trustee's argument that the debtors must make their remaining 3.5 plan payments.

The Chapter 13 trustee has filed an appeal of this Court's ruling and filed a Request for Certification for Direct Appeal to the Fifth Circuit Court of Appeals (the Request) [Doc. No. 231]. The debtors oppose the Request. For the reasons set forth herein, this Court recommends to the Fifth Circuit that it directly accept the Chapter 13 trustee's appeal.

---

[3] In 2005, the Bankruptcy Code was amended. The changes in the Bankruptcy Code are commonly referred to as the BAPCPA amendments because the law is entitled the "Bankruptcy Abuse Prevention and Consumer Protection Act" (BAPCPA). A major purpose of BAPCPA is to require debtors to pay more to unsecured creditors than they were paying prior to BAPCPA. *See Whaley v. Tennyson (In re Tennyson)*, 611 F.3d 873, 879 (11th Cir. 2010). Indeed, under BAPCPA, debtors in Chapter 13 who are not paying their unsecured creditors in full must commit in their plans to make payments to the trustee for 60 months. *Nowlin v. Peake (In re Nowlin)*, 576 F.3d 258, 260 (5th Cir. 2009) ("That designation [i.e., an 'above-median income debtor'] requires a minimum applicable commitment period of five years under 11 U.S.C. § 1325(b)(4)."); *see also Danielson v. Flores (In re Flores)*, 735 F.3d 855, 860–61 (9th Cir. 2013), for a discussion of the legislative history of the 60-month minimum plan commitment period for above-median income debtors who are not paying their unsecured creditors in full.

2

## II. FACTUAL AND PROCEDURAL BACKGROUND

Charles J. Ruth, III and Jennifer L. Ruth (the Debtors) filed their Chapter 13 petition on January 29, 2009. [Doc. No. 1]. The Debtors obtained confirmation of their Chapter 13 plan, which they thereafter modified. [Doc. Nos. 31, 44, 56, 65, 74, 87, 91 & 99]. The plan base under the modified plan is $93,196.74. [November 5, 2013 Tr. 4:1–4:3].

On March 12, 2012, the Debtors filed a Motion for Approval of Compromise of Adversary Proceeding under Fed. R. Bankr. P. 9019 of the Federal Rules of Bankruptcy Procedure (the Motion for Approval of Compromise). [Doc. No. 166]. This Court approved the proposed compromise on April 3, 2012. [Doc. No. 167]. The Order Approving Compromise required that $10,000.00 of the settlement proceeds (the Settlement) be distributed to the Trustee, "to be applied to the Debtors' bankruptcy account." [*Id.* at p. 1, ¶ 2]. The $10,000.00 from the Settlement was thereafter remitted directly to the Trustee, and he distributed the monies to the creditors.

On September 25, 2013, David G. Peake, the Chapter 13 Trustee in this case (the Trustee), filed his Motion to Modify a Confirmed Plan, Pursuant to 11 U.S.C. Section 1329 (the Motion). [Doc. No. 192]. In the Motion, the Trustee proposed to add the $10,000.00 from the Settlement to the Debtors' plan base, increasing their plan base from $93,196.74 to $103,196.74. [*Id.* at p. 2, ¶¶ 2–3; November 5, 2013 Tr. 4:4–4:10]. The Trustee filed the Motion because under the existing confirmed plan, unsecured creditors are receiving only a 2% distribution of their claims.[4] *See* [November 4, 2013 Tr. 11:18–11:22]. By increasing the plan base to $103,196.74—which would be accomplished by requiring the Debtors to make their remaining

---

[4] Total unsecured claims are $19,041.00, and the distribution to the unsecured creditors under the existing plan is $474.81. [November 4, 2013 Tr. 13:7–13:12].

3.5 payments under the confirmed plan—unsecured creditors would receive approximately 80% of their claims.[5] [*Id.* at 13:16–13:19].

On October 1, 2013, the Debtors filed a response opposing the Motion (the Response). [Doc. No. 194]. The Response sets forth that the sum of the payments which the Debtors have already made, plus the $10,000.00 received from the Settlement, exceeds the plan base of $93,196.74. *See id.* They therefore contend that they have completely performed under their plan, are immediately entitled to a discharge, and are relieved from having to make the remaining 3.5 payments under their confirmed plan.

On November 4, 2013, this Court held a hearing on the Motion (the Hearing), during which testimony was adduced, exhibits were introduced, and oral arguments were made by counsel. The arguments from counsel focused on 11 U.S.C. § 1329(a). This provision sets forth that a Chapter 13 plan may be modified but only "before the completion of payments under such plan." Counsel for the Trustee argued that this phrase should be interpreted from a temporal standpoint, and therefore the Debtors' plan could be modified because they have not yet made all 60 payments. Counsel for the Debtors disagreed. She argued that this phrase should be interpreted from a monetary standpoint and that therefore the Debtors' plan could not be modified because the Debtors have already paid the plan base of $93,196.74. After considering these arguments, the Court took the matter under advisement.

On November 5, 2013, the Court orally announced its Findings of Fact and Conclusions of Law from the bench and denied the Motion. *See* [November 5, 2013 Tr. 3:19–14:20]. Citing

---

[5] The percentage distribution would increase from 2% to 80% because virtually all of the payments that the Trustee has received in the first 56.5 months have been distributed to secured creditors and administrative claimants. Now that some of these claims have been paid in full, the remaining 3.5 payments would be distributed, to a greater extent than in the first 56.5 months, to unsecured creditors. This scenario is quite typical in Chapter 13 cases, as debtors, throughout most of the duration of their plans, are paying secured creditors (such as home lenders, vehicle finance companies, and holders of tax liens) and administrative claims (such as attorneys' fees).

4

the holdings in *Smith* and *Ezzell*, as well as the *dicta* in *Meza*, the Court denied the Motion. [*See id.* at 6:2–14:14]. It did so because based on the holdings in *Smith* and *Ezzell*, as well as the *dicta* in *Meza*, the Court concluded that the phrase "completion of payments under such plan" should be construed from a monetary standpoint, not a temporal standpoint; that therefore the Debtors had completed all payments under their plan by prepaying the plan base of $93,196.74; and that therefore under 11 U.S.C. § 1329(a), no modification of their plan was permissible.

On the same day that this Court issued its oral ruling, it also entered a written order denying the Motion (the Order Denying the Motion). [Doc. No. 204]. On November 19, 2013, the Trustee timely filed a Notice of Appeal, appealing the Order Denying the Motion. [Doc. No. 210]. On December 11, 2013, the Trustee filed the Request. [Doc. No. 231]. The Debtors filed a response opposing the Request on December 20, 2013. [Doc. No. 234]. For the reasons set forth below, this Court recommends direct certification.

### III. THE FIFTH CIRCUIT HAS JURISDICTION TO HEAR A DIRECT APPEAL OF THE ORDER DENYING THE MOTION

#### A. Because the Order Denying the Motion is a Final Order, the Fifth Circuit has Jurisdiction to Directly Hear this Appeal

Pursuant to 28 U.S.C. § 158(d)(2)(A), which references § 158(a), the Fifth Circuit has jurisdiction of appeals from final orders. *See* 28 U.S.C. § 158(a)(1), (d)(2) (2010). In the case at bar, the Trustee is treating the Order Denying the Motion as a final order because he has not sought leave to prosecute an interlocutory appeal. The Trustee is on firm ground in this respect, as there is ample case law holding that a denial of a motion to modify a confirmed Chapter 13 plan is a final order. *See, e.g., Brown v. Brown (In re Brown)*, 378 B.R. 416, at *1 (B.A.P. 6th Cir. 2007) (stating that the order denying the motion to modify a confirmed chapter 13 plan is a final, appealable order); *Profit v. Savage (In re Profit)*, 283 B.R. 567, 572 (B.A.P. 9th Cir. 2002)

("Ordinarily, a chapter 13 plan confirmation order, whether or not a modification, is a final order."); *Ledford v. Brown (In re Brown)*, 219 B.R. 191, 192 (B.A.P. 6th Cir. 1998) ("Denial of a motion to modify a confirmed Chapter 13 plan is a final appealable order.").

Accordingly, the Fifth Circuit has jurisdiction to hear a direct appeal on this matter.

B.  **In the Alternative, Even if the Order Denying the Motion is an Interlocutory Order, the Fifth Circuit has Jurisdiction to Directly Hear this Appeal**

Despite the abundant case law holding that a denial of a motion to modify a Chapter 13 plan is a final order, at least one court has held that a denial of such a motion is <u>not</u> a final order. *See Vincent v. Fairbanks Capital Corp. (In re Vincent)*, 301 B.R. 734, 738 (B.A.P. 8th Cir. 2003) ("[T]he denial of the modification of a confirmed plan bestows no more finality on the bankruptcy court's order than the denial of confirmation of a plan."). Even if the Order Denying the Motion is an interlocutory order, the Fifth Circuit nevertheless has jurisdiction to hear this appeal under 28 U.S.C. § 158(d)(2)(A). In *Crosby v. Orthalliance New Image (In re OCA, Inc.)*, 552 F.3d 413 (2008), the Fifth Circuit held that:

> The text of the statute grants the courts of appeals "jurisdiction of appeals described in the *first sentence* of subsection (a)." *Id.* § 158(d)(2)(A) (emphasis added). The first sentence of section 158(a) grants district courts jurisdiction over bankruptcy appeals from interlocutory orders or decrees if granted leave by the district court. *Id.* § 158(a)(3). Since interlocutory orders are included in the first sentence of subsection (a) and all of the jurisdictional prerequisites of section 158(d)(2) are met, this court has jurisdiction to hear [the Debtor's] direct appeal from the bankruptcy court.

*Id.* at 418; *see also* 28 U.S.C. § 158(a)(3), (d)(2)(A); *see also Stansbury v. Holloway (In re Holloway)*, 425 F. App'x 354, 357 (5th Cir. 2011) ("Pursuant to 28 U.S.C. § 158(d), we have jurisdiction over direct appeals from interlocutory orders of a bankruptcy court if the bankruptcy court makes the appropriate certification and this court grants leave to appeal.").

## IV. REASONS FOR RECOMMENDING CERTIFICATION FOR DIRECT APPEAL

The Trustee sets forth two grounds in support of a direct appeal: 28 U.S.C. § 158(d)(2)(A)(i) and § 158(d)(2)(A)(iii). At this time, the undersigned judge believes that certification is warranted only pursuant to § 158(d)(2)(A)(i).[6] [Doc. No. 231, p. 1, ¶ 3]. This subsection provides that a direct appeal to the Fifth Circuit is appropriate if the "order . . . involves a question of law as to which there is no controlling decision of the court of appeals for the circuit, or of the Supreme Court of the United States, or involves a matter of public importance."

Here, this Court believes that a direct appeal to the Fifth Circuit is appropriate under 28 U.S.C. § 158(d)(2)(A)(i) because the issue on appeal involves both: (1) a matter of public importance; and (2) a question of law as to which there is no controlling decision in the Fifth Circuit or of the Supreme Court of the United States.

### A.     The Order Denying the Motion Involves a Matter of Public Importance

Under the second prong of 28 U.S.C. § 158(d)(2)(A)(i), certification for direct appeal is appropriate when it is a matter of public importance. 28 U.S.C. § 158(d)(2)(A)(i); *see also* 1 *Collier on Bankruptcy*, ¶ 5.06[4][b] at 5-27 (16th ed. 2013) ("Given the fact that this is an alternative ground for seeking a direct appeal, a case involving a matter of public important

---

[6] In the Request, the Trustee argues that certification is warranted pursuant to subsection (iii) of § 158(d)(2)(A) because "an immediate appeal from the judgment, order, or decree may materially advance the progress of the case or proceeding in which the appeal is taken." [Doc. No. 231, p. 2, ¶ 5 (quoting 28 U.S.C. § 158(d)(2)(A)(iii))]. Specifically, the Trustee contends that "[t]he outcome of the appeal will determine whether the Debtors have completed their plan now and are eligible for discharge, or are eligible for discharge after completing a full 60 months of plan payments." [Doc. No. 231, p. 2, ¶ 5]. The undersigned judge does not believe this is a basis for certification at this time because the Debtors' Motion for Entry of Discharge was orally granted on January 29, 2014. [Tape Recording, January 29, 2014 Hearing at 3:44:43–3:45:06 p.m.]. The Court directed counsel for the Debtors to draft a proposed order consistent with the Court's ruling, obtain the signature of the Trustee's counsel as to "form only," and then submit this order to the Court. [*Id.* at 3:47:15–3:47:56 p.m.]. As yet, no such order has been submitted. When it is submitted, this Court will sign and enter the order on the docket. If the Trustee then appeals this order—and his counsel has stated on the record that the Trustee will appeal—then the Trustee may seek a stay of this order pending appeal; and if he successfully obtains a stay, then his argument that certification for direct appeal is warranted under § 158(d)(2)(A)(iii) would no longer be premature.

might exist even if there is controlling court of appeals or Supreme Court precedent, although that is doubtful."). "[A]n appeal may be certified as a matter of public importance either because it involves important legal issues or important practical ramifications." *Jaffé v. Samsung Elecs. Co. (In re QIMONDA AG)*, 470 B.R. 374, 386 (E.D. Va. 2012). Here, there are two reasons that the issue on appeal involves a matter of public importance.

1. Resolution of the Legal Issue Affects the Administration of Numerous Chapter 13 Estates

"A 'matter of public importance' should transcend the litigants and involve a legal question the resolution of which will advance the cause of jurisprudence to a degree that is usually not the case." 1 *Collier on Bankruptcy*, ¶ 5.06[4][b] at 5-27 (16th ed. 2013). Here, the issue on appeal affects the administration of numerous bankruptcy estates. The decision of whether an above-median income debtor is immediately entitled to a discharge upon prepayment of the plan base, even though unsecured creditors are not receiving a 100% dividend, is one of the most important decisions of the Chapter 13 process. If this Court was incorrect in denying the Motion, then the Debtors' plan base must be increased to $103,196.74, and they are not immediately entitled to a discharge because they need to make their 3.5 remaining plan payments. The resolution of this issue transcends the parties in this case because it will give Chapter 13 trustees and numerous debtors clarification regarding the effect of receiving a lump sum payment—regardless of whether the source is a settlement, a gift, a bonus, etc.—on the debtors' ability to receive an immediate discharge. Because discharge is the ultimate goal of any debtor in bankruptcy, the practicing bar needs to know whether a Chapter 13 debtor can make a lump sum payment to prepay his plan base and receive an immediate discharge even though the debtor is not paying his unsecured creditors in full. For these reasons, this Court believes that this issue involves a matter of public importance.

2. Public Policy Reasons Relating to BAPCPA

BAPCPA brought forth watershed changes in various provision of the Bankruptcy Code. Indeed, the Eleventh Circuit has noted one of them: "The heart of [BAPCPA's] consumer bankruptcy reforms . . . is **intended to ensure that debtors repay creditors the maximum they can afford**." *In re Tennyson*, 611 F.3d 873, 879 (11th Cir. 2010) (emphasis added) (quoting H.R. REP. NO. 109-031, pt. 1, at 2 (2005)).

At first blush, it appears that permitting debtors to be immediately entitled to a discharge after they prepay their plan base, even though their unsecured creditors are not paid in full, runs contrary to the fundamental premise of BAPCPA that debtors should "repay creditors the **maximum** they can afford." *See id.* However, in allowing a debtor to prepay his plan base and receive an immediate discharge without paying unsecured claims in full, one bankruptcy court articulated a sound economic basis for his decision:

> Although the unsecured creditors are only receiving approximately 23% of their claims under the Plan, they would receive the funds quicker and in a single payment and without risking future defaults by the Debtor. Moreover, they would receive a greater return if the Debtor prepaid the amounts rather than merely completed his payments under the Plan due to the increased time value of money. The creditors receive a substantial benefit under the Debtor's proposal to accelerate payments. Similarly, the Debtor receives a benefit of ridding himself of an ongoing, troublesome creditor. All sides benefit.

*In re Easley*, 205 B.R. 334, 336 (Bankr. M.D. Fla. 1996). Indeed, the district court in *Bayshore Nat'l Bank of Laporte v. Smith*, 252 B.R. 107 (E.D. Tex. 2000)—which the Fifth Circuit affirmed in *Smith*, 252 F.3d 1357, at *1 (5th Cir. 2001) (per curiam)—agreed. Specifically, the district court stated that the reasoning applied by the bankruptcy court in *Easley* "encourages debtors to accelerate the completion of plan payments to creditors . . . and [t]his court likewise views this as a worthy goal." *Smith*, 252 B.R. at 110.

Thus, given the case law cited above, two competing arguments exist as to which method better fulfills the fundamental premise of BAPCPA that debtors should "repay creditors the **maximum** they can afford," *see In re Tennyson*, 611 F.3d at 879 (emphasis added): (1) requiring above-median income debtors to pay their unsecured creditors in full or, if not in full, then requiring them to make plan payments for 60 months before they can receive a discharge; or (2) allowing debtors to prepay their plan base and be immediately entitled to a discharge, thereby giving unsecured creditors the benefit of the time value of money and no risk of future default, but depriving them of receiving a greater percentage of their claims if all 60 payments were made.

Given these competing arguments, this Court believes that the resolution of the legal issue in the Motion is very much a matter of public importance because it would provide clarification regarding BAPCPA's objective of increasing repayment of unsecured claims in bankruptcy.

**B.     The Order Denying the Motion Involves a Question of Law as to Which There Is No Controlling Decision in the Fifth Circuit or of The Supreme Court**

First, this Court addresses the two cases in the Fifth Circuit that are factually similar to the case at bar—the Fifth Circuit's unpublished decision in *Smith* and Bankruptcy Judge Isgur's opinion in *Ezzell*. Then, this Court discusses the opinions of four other Circuit Courts of Appeals that the Trustee has cited in support of his position. These cases are distinguishable from the case at bar because these cases involved an objection to confirmation of a plan as opposed to modification of a plan that has already been confirmed. Nevertheless, these opinions, all of which have been issued post-BAPCPA, offer some support for the Trustee's position.

1. The Fifth Circuit's unpublished per curiam opinion

This Court denied the Motion, in part, based upon the Fifth Circuit's opinion in *Bayshore Nat'l Bank of La Porte v. Smith (In re Smith)*, 252 F.3d 1357, at *1 (5th Cir. 2001) (per curiam). The appeal arose from a ruling issued by the bankruptcy court from the Eastern District of Texas, which the district court affirmed in *Bayshore Nat'l Bank of Laporte v. Smith*, 252 B.R. 107 (E.D. Tex. 2000).

In *Smith,* the debtor obtained confirmation of her second amended chapter 13 plan. *Smith*, 252 B.R. at 108. The order confirming the plan required the debtor to pay 56 monthly installments to the trustee; the total of these installments—i.e., the plan base—was $14,495.20. *Id.* at 108–09. Prior to the twenty-seventh monthly installment, the debtor obtained a gift from her family of $7,755.55, which was the exact amount equal to the unpaid balance of her plan base. *Id.* at 109. The debtor did not disclose this gift to the court or her creditors; she simply remitted this amount to the trustee. *See id.* Meanwhile, the trustee did not file any objections to the lump sum payment, or request a modification of the debtor's plan to increase the plan base by $7,755.55. *Id.* Instead, the trustee simply made distributions of the $7,755.55 to the creditors. *Id.*

After distributing the money to the creditors, the trustee filed a "Notice of Plan Completion and Order Setting Discharge." *Id.* This pleading gave notice to all creditors that the trustee believed that the debtor had completed her obligations under her plan and was entitled to a discharge.[7] Bayshore National Bank of La Porte (BNB), an undersecured creditor, filed an

---

[7] It is worth noting that the Chapter 13 trustee in *Smith* believed that the debtor was entitled to a discharge after paying her plan base even though she had not made all of the scheduled monthly payments required by her plan; whereas, in the case at bar, the Trustee believes that the Debtors are **not** entitled to a discharge until they have made all of their 60 scheduled monthly payments required by their plan. The fact that two very capable trustees disagree over this issue of law underscores the need for a direct appeal so that not only debtors' attorneys and creditors' attorneys will know how to counsel their respective clients, but also so that trustees will know how to assess receipt

11

objection to the notice. *Id.* BNB asserted that the debtor was not yet entitled to a discharge because she was not going to make at least 36 monthly payments to the trustee—a requirement under the Bankruptcy Code given that she was not paying her unsecured creditors in full.[8] *Id.* BNB argued that: (1) the debtor's lump sum payment should not be construed as full payment of the plan base resulting in a discharge for her, but rather should be viewed as a motion by the debtor to modify her confirmed plan from a 56-month commitment to a 27-month commitment; and (2) if viewed as a motion to modify, the motion should be denied because it would relieve the debtor of making at least 36 payments to the trustee. *Id.* The bankruptcy court overruled BNB's objection and granted the debtor a discharge. *Id.* at 108–09. BNB appealed this decision. *Id.* at 109.

> The district court affirmed the bankruptcy court's holding by concluding that:
>
> [T]he plain language of the statute indicates [sic] [that] when a chapter 13 debtor completes all payments the debtor is entitled to a discharge. Since the language does not state that a lump sum payment cannot be used to complete the payments, this suggests that the debtor should be entitled to a discharge when he does so.

*Id.* In arriving at its decision, the district court construed the phrase "completion by the debtor of all payments under the plan" as a monetary requirement rather than a temporal requirement: "Payments under a confirmed plan are complete when the debtor fulfills all obligations to the creditors under that plan. Courts should not view the number of payments or the duration of a

---

of lump sum payments that prepay the plan base and whether to seek modifications of plans to increase the plan base so that unsecured creditors receive a greater distribution.

[8] *Smith* was decided prior to the passage of BAPCPA. At the time of the issuance of the district court's opinion, the minimum period for a Chapter 13 plan was 36 months, unless the plan called for creditors to receive a 100% dividend prior to month 36. *See* 11 U.S.C. § 1325(b)(1)(B) (1998) ("[T]he court may not approve the plan unless . . . the plan provides that all the debtor's projected disposable income to be received in the **three-year period** . . . .") (emphasis added). As already noted in footnote number 3, BAPCPA changed this provision to require above-median income debtors who are not paying their unsecured creditors in full to make 60 monthly payments. *See infra* note 3; *see also* 11 U.S.C. § 1325(b)(4)(A)(ii) ("[T]he 'applicable commitment period' . . . shall be . . . **not less than 5 years** . . . .") (emphasis added).

plan as controlling on the issue of whether a plan has been completed."[9] *Id.* (citing *Casper v. McCullough (In re Casper)*, 154 B.R. 243, 246 (N.D. Ill. 1993)). Applying this monetary view, the district court logically concluded that "the debtor completed her plan payments when she paid the balance of her plan [base] from a gift that she obtained from her parents. The debtor discharged her obligations to her creditors as provided for in her confirmed plan and the bankruptcy court was correct in granting her a discharge." *Id.* at 110.

The district court rejected BNB's argument that the debtor was required to make at least 36 monthly payments (in addition to making the lump sum payment of $7,755.55) on the grounds that "[t]he reasoning applied by the bankruptcy court in this case encourages debtors to accelerate the completion of plan payments to creditors. In most cases, due to the time value of money, creditors would prefer to have the plan payments accelerated." *Id.* (citing *In re Easley*, 205 B.R. 334, 336 (Bankr. M.D. Fla. 1996)).

BNB appealed this decision to the Fifth Circuit. *In re Smith*, 252 F.3d 1357, at *1 (5th Cir. 2001) (per curiam). In a one-page per curiam opinion, the Fifth Circuit affirmed the district court's ruling, concluding that: "We are persuaded that, under the particular circumstances of this case, the district court did not err in affirming the bankruptcy court's Order. The judgment of the district court is AFFIRMED." *Id.* at *1.

In the case at bar, this Court denied the Motion, in part, based upon the Fifth Circuit's affirmance of the district court's ruling in *Smith*. Here, just like the debtor in *Smith*, the Debtors became entitled to a lump sum payment of $10,000.00 (i.e., from the Settlement). Once the Trustee received this payment, he distributed the funds to the Debtors' creditors. Again, just like

---

[9] The district court was focused on 11 U.S.C. § 1328(a), which sets forth that discharge of the debtor is appropriate "after completion by the debtor of all payments under the plan." This language is similar to the language in 11 U.S.C. § 1329(a), which sets forth that modification of a confirmed plan can be done but only before "the completion of payments under such plan."

the debtor in *Smith,* as a result of the lump sum payment, the Debtors paid their plan base earlier than anticipated—i.e., the Debtors completed their base plan payment in 56.5 months instead of 60 months. Indeed, the Trustee stipulated that the Debtors' plan base has now been completely paid. [November 4, 2013 Tr. 43:7–43:8]. Moreover, unlike the debtor in *Smith,* the Debtors disclosed the source of the $10,000.00 in the Motion for Approval of Compromise. [Doc. No. 166, p. 3, ¶¶ 6 & 7A]. Thus, the Debtors here were more open than the debtor in *Smith* because they made the Trustee and their creditors aware of the additional $10,000.00 through the filing of the Motion for Approval of Compromise. [Doc. No. 166]. Yet, the Trustee waited almost 18 months after this Court approved the compromise—by which time the Debtors had paid their plan base—to file the Motion. [*Compare* Doc. No. 166 *with* Doc. No. 192]. Recognizing the Fifth Circuit's ruling in *Smith* and given the Debtors' complete disclosure of the $10,000.00 from the Settlement, this Court denied the Motion. *See also In re McCarthy,* 391 B.R. 372, 374–75 (Bankr. N.D. Tex. 2008) (en banc) (holding that the debtor's complete disclosure of remittance to the trustee of a lump sum payment from a sale of property favored granting the debtor's motion for early discharge due to his prepayment of the plan base).

The Court notes that because *Smith* is an unpublished opinion, it is <u>not</u> controlling law.[10] *See Smith,* 252 F.3d 1357, at *1, n.* ("Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4."). Indeed, Rule 47.5.4 of the Federal Rules of Appellate Procedure with Fifth Circuit Rules and Internal Operating Procedures states as follows:

---

[10] While *Smith* is not binding precedent, the undersigned judge gives considerable weight to the Fifth Circuit's ruling, not only because of the similar fact pattern, but also because the Debtors in the case at bar made more disclosures about the lump sum payment than the debtor in *Smith.*

14

>Unpublished opinions issued on or after January 1, 1996*, are not precedent, except under the doctrine of res judicata, collateral estoppel or law of the case (or similarly to show double jeopardy, notice, sanctionable conduct, entitlement to attorney's fees, or the like).

FED. R. APP. P. & 5TH CIR. R. 47.5.4. Because *Smith* is an unpublished opinion, which was issued on April 5, 2001—after January 1, 1996—it is not binding precedent.

Moreover, *Smith* concerns the interpretation of the phrase "after completion by the debtor of all payments under the plan" under 11 U.S.C. § 1328(a), and not the interpretation of the phrase "the completion of payments under such plan" under 11 U.S.C. § 1329(a). Even though these phrases are very similar, the fact that *Smith* concerns § 1328(a) and the case at bar concerns § 1329(a) means that *Smith* is not binding precedent in the case at bar.

For these reasons, there is no controlling law from the Fifth Circuit on the issue which the Trustee has appealed in the case at bar. Nor is there any controlling law from the Supreme Court of the United States.

2. Bankruptcy Judge Isgur's opinion in Ezzell

The Debtors rely heavily on the post-BAPCPA opinion of Bankruptcy Judge Isgur in *Ezzell*, 438 B.R. 108 (Bankr. S.D. Tex. 2010), and the undersigned judge found *Ezzell* persuasive in ruling on the Motion. In *Ezzell*, during the third year of the debtors' five-year plan period, the debtors received $467,387.78 as a result of a settlement. *Id.* at 111–12. This lump sum payment, combined with payments already received by the debtors, easily exceeded the plan base of $123,000.00. *See id.* The trustee received the settlement proceeds, but did not apply the funds toward the remaining amounts due under the plan. *Id.* at 112. The debtors filed a motion to disburse, seeking an order directing the trustee to pay creditors the remaining balance of the plan base, and to refund to the debtors the excess funds. *Id.*

The trustee and two creditors objected to the debtors' motion to disburse for the following reasons: (1) The confirmed plan did not "provide for any payment of allowed unsecured claims," and because the debtors were now able to pay all allowed unsecured claims in full from the settlement proceeds, the debtors should be required to do so; and (2) The debtors must complete the 60-month commitment period now required by BAPCPA under 11 U.S.C. § 1325(b)(4)(B), or if they prepay their 60-month plan, then they must pay all allowed unsecured claims in full. *Id.* One of the unsecured creditors also filed a motion to modify the confirmed plan, requesting the court to enter an order amending the plan so allowed unsecured claims could be paid in full. [Case No. 07-34780, Doc. No. 227, p. 3–4, ¶¶ 10 & 11].

The debtors argued that 11 U.S.C. § 1329(a) bars plan modification once "completion of payments" under the plan has occurred; and, according to the debtors, the phrase "completion of payments" means to pay the plan base—as opposed to making the 60 monthly payments required under their plan. *In re Ezell* 438 B.R. at 112.

Judge Isgur cited *In re Meza,* 467 F.3d 874 (5th Cir. 2006) to issue his ruling. *Id.* at 114. In *Meza,* the Fifth Circuit did not examine whether a motion to modify would be barred if it is filed <u>after</u> a debtor pays the plan base to the trustee, but rather whether a motion to modify is barred if, after the motion to modify is filed but before a hearing is held on this motion, the debtor pays the entire plan base with a lump sum payment.[11] *Id.* at 115. However, the Fifth Circuit, in *dicta,* made the following observation:

> Consistent with § 1329's plain language, it is largely undisputed "that a plan cannot be modified once all payments have been made". "[I]f a trustee could amend a Chapter 13 plan *after* the debtor completes his or her payments to the trustee, the mandatory nature of the discharge provision [§ 1328] would be eviscerated". Accordingly, if a debtor pays his plan balance and the trustee then

---

[11] The Fifth Circuit held that a motion to modify a confirmed plan is not barred if the motion is filed before the debtor pays the entire plan base even if such payment occurs before the hearing on the motion to modify is actually held. *See In re Meza,* 467 F.3d 874 (5th Cir. 2006).

16

> seeks to modify the plan under § 1329 to account for newly-acquired funds, modification is *not* permitted.

*In re Meza*, 467 F.3d at 878 (citations omitted). Relying on this language, Judge Isgur held that "completion of payments occurs when a debtor completes payments to the trustee."[12] *Ezzell*, 438 B.R. at 115. Stated differently, Judge Isgur held that the meaning of "completion of payments under such plan" means that if a debtor prepays the plan base, he is relieved of making all 60 payments. Further, Judge Isgur held that because the debtors' settlement proceeds were transferred to the trustee before the motion to modify was filed, and the funds were sufficient to complete their payments under the confirmed plan, the motion to modify was barred and the debtors were entitled to a discharge. *Id.* at 115–16; *see also* 11 U.S.C. § 1328(a) (stating that discharge of the debtor is appropriate "after completion by the debtor of all payments under the plan"); *see also In re McCarthy*, 391 B.R. 372, 374–75 (Bankr. N.D. Tex. 2008) (en banc) (holding that payment of the plan base of $49,260.00 constituted completing of all payments under the plan, thereby relieving the debtors of having to make 60 months of plan payments).

In the case at bar, just like the unsecured creditor in *Ezzell*, the Trustee filed the Motion after the Trustee received the lump sum payment of $10,000.00. The Debtors, citing to the similar fact pattern and the holding in *Ezzell*, argue that the Motion is barred because they, just like the debtor in *Ezzell*, have prepaid their plan base and, therefore, have completed their plan payments—which, under 11 U.S.C. § 1329(a), bars modification of their plan. The undersigned

---

[12] Judge Isgur thus arrived at the same conclusion about the meaning of the phrase "completion of payments under such plan" under 11 U.S.C. § 1329(a) as the conclusion that the district court in *Smith* arrived at about the meaning of the phrase "after completion by the debtor of all payments under the plan" under 11 U.S.C. § 1328(a). Namely, both courts found that these phrases are to be construed from a monetary point of view and not a temporal point of view. Indeed, the Fifth Circuit's affirmance of the district court's ruling in *Smith*, and the Fifth Circuit's *dicta* in *Meza*, seems to be an endorsement that it is the <u>amount</u> of the payments under the plan, not the <u>number</u> of payments, that is the relevant inquiry as to whether a debtor has completed payments under the plan under both § 1328(a) and § 1329(a).

17

judge has accepted this argument given the holdings in *Smith* and *Ezzell*, as well as the *dicta* in *Meza*.

### 3. Decisions of Four Other Circuit Courts of Appeals

The Trustee cites to four opinions of other Circuit Courts of Appeal in support of his position that the Debtors are required to make all 60 payments despite having prepaid the plan base to the Trustee—*Danielson v. Flores (In re Flores)*, 735 F.3d 855 (9th Cir. 2013); *Baud v. Carroll*, 634 F.3d 327 (6th Cir. 2011); *In re Tennyson*, 611 F.3d 873 (11th Cir. 2010); *Coop v. Frederickson (In re Frederickson)*, 545 F.3d 652 (8th Cir. 2008). There is no question that these four opinions hold that the "applicable commitment period" under 11 U.S.C. § 1325(b)(4) for an above-median income debtor whose plan does not pay unsecured creditors in full is 60 months. Given these holdings, the Trustee asserts that the Debtors in the case at bar—who are not paying their unsecured creditors a 100% dividend—are required to make all 60 of their scheduled plan payments. He essentially argues that given BAPCPA's 60-month requirement, it necessarily follows that the phrase "completion of payments under such plan" under 11 U.S.C. § 1329(a) means "completion of all 60 payments under such plan because the applicable commitment period is 60 months." Therefore, according to the Trustee, the Motion is not barred because the Trustee filed this pleading prior to the Debtors making all 60 payments under their confirmed plan, and the modification he requests is appropriate because the Debtors' existing plan pays unsecured creditors less than a 100% dividend—indeed, it is only a 2% dividend. *See* [November 4, 2013 Tr. 11:18–11:22]. By modifying the Debtors' existing plan so that the plan base is increased from $93,196.74 to $103,196.74, unsecured creditors will receive an 80% dividend—a result which the Trustee submits achieves the fundamental premise of BAPCPA: namely, that debtors in general, and the Debtors in the particular case at bar, should "repay

creditors the **maximum** they can afford," *see In re Tennyson*, 611 F.3d at 879 (11th Cir. 2010) (emphasis added). [*Id.* at 13:16–13:19].

This Court acknowledges that these Circuit Court opinions are persuasive to a certain extent, but they are not factually similar to the case at bar. Specifically, these four opinions involved objections to the confirmation of a <u>proposed</u> chapter 13 plan under 11 U.S.C. § 1325(b)(4); whereas, in the case at bar, there is a <u>confirmed</u> chapter 13 plan, the Debtors became entitled to the lump sum payment of $10,000.00 <u>after</u> they had already made payments under the confirmed plan, and the Trustee seeks to modify the confirmed plan under 11 U.S.C. § 1329(a). The nub of the dispute is therefore whether the phrase "applicable commitment period" under 11 U.S.C. § 1325(b)(4)—which is 60 months for the Debtors in the case at bar—necessarily means that the phrase "completion of payments under such plan" in 11 U.S.C. § 1329(a) requires that all 60 payments be made before modification is barred. The Trustee asserts that he is allowed to modify because the phrase "completion of payments" is a temporal requirement and the Debtors have only made 56.5 payments, not all 60 payments; and the Debtors contend that he is barred because the phrase "completion of payments" is construed as a monetary requirement and they have prepaid their plan base of $93,196.74. Although there are opinions from bankruptcy courts favoring the Trustee's position[13], this Court has accepted the Debtors' argument based upon the holdings in *Smith* and *Ezzell*, and the *dicta* in *Meza*, and therefore denied the Motion. This ruling will deprive unsecured creditors in this case of receiving an 80% dividend, and they will be stuck with a 2% dividend. This Court believes that because its ruling violates the fundamental premise of BAPCPA that debtors should "repay

---

[13] *See, e.g., In re Heideker*, 455 B.R. 263 (Bankr. M.D. Fla. 2011); *In re Buck*, 443 B.R. 463 (Bankr. N.D. Ga. 2010). The Trustee did not cite these bankruptcy court opinions, whose fact patterns are very similar to the facts in the case at bar, but chose rather to cite the Circuit Court opinions, all of which concerned plan confirmations under 11 U.S.C. § 1325(a) rather than plan modifications under 11 U.S.C. § 1329(a).

creditors the **maximum** they can afford,"[14] it is particularly appropriate to recommend direct certification to the Fifth Circuit. If the Trustee's contention that the phrase "completion of payments under such plan" under 11 U.S.C. § 1329(a) is a temporal requirement, then the practicing bar and all Chapter 13 trustees need to know sooner rather than later.[15]

## V. CONCLUSION

For the reasons set forth above, certification is appropriate pursuant to 28 U.S.C. § 158(d)(2)(A)(i) for two separate and independent reasons: (1) there is a question of law as to which there is no controlling decision in the Fifth Circuit or of the Supreme Court; and (2) the issue involves a matter of public importance.

Signed this 13th day of February, 2014.

Jeff Bohm
Chief United States Bankruptcy Judge

---

[14] See In re Tennyson, 611 F.3d at 879 (11th Cir. 2010) (emphasis added).

[15] Some bankruptcy courts who have held that 11 U.S.C. § 1329(a)'s language is a monetary requirement, not a temporal requirement, have argued, among other points, that applying § 1325(a)'s temporal requirement to § 1329(a) would nullify § 1329(a). See, e.g., In re Ewers, 366 B.R. 139, 143 (Bankr. D. Nev. 2007). This Court disagrees. The Trustee's temporal interpretation of the phrase "completion of payments under such plan" in § 1329(a) would not completely eviscerate an above-median income debtor's ability to bar attempted modifications of a confirmed plan, but it would certainly reduce the number of instances where a debtor could make this argument. Such an argument could only be made under the following conditions: (a) the trustee has received all 60 payments; (b) the trustee has not yet actually distributed the 60th payment to creditors; (c) the debtor then receives a lump sum payment before the trustee has distributed the 60th payment; and (d) at this point, an unsecured creditor or the trustee files a motion to modify the confirmed plan. While the Trustee's temporal interpretation, if accepted, would severely restrict a debtor's ability to assert this defense, this interpretation is nevertheless consistent with the premise of BAPCPA that debtors should "repay creditors the **maximum** they can afford." See In re Tennyson, 611 F.3d 873, 879 (11th Cir. 2010) (emphasis added) (quoting H.R. REP. NO. 109-031, pt. 1, at 2 (2005)). Finally, as one court has noted, even if above-median income debtors would not be able to use 11 U.S.C. § 1329(a) to bar modification of their plans as frequently as they could under the monetary interpretation, this provision still applies to many below-median income debtors. See In re Heideker, 455 B.R. at 270. The fact that one subsection of a statute may be inapplicable to one category of debtors does not render the statute superfluous. Id.